# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------X
In re:                           :    Chapter 11
                                 :
FAVORITE BRANDS INTERNATIONAL    :    Case No. 99-726 (PJW)
HOLDING CORP *et al.*,           :
                                 :    Jointly Administered
                                 :    and Substantively Consolidated
            Debtors.             :
                                 :    Hearing Date: December 18, 2006 @ 3:00 p.m.
---------------------------------X    Objections Due: December 11, 2006 @ 4:00 p.m.

## MOTION OF THE PLAN ADMINISTRATOR (A) TO REOPEN THE BANKRUPTCY CASE, (B) TO AUTHORIZE THE PLAN ADMINISTRATOR TO MAKE A FINAL SUPPLEMENTAL DISTRIBUTION, (C) TO WAIVE CERTAIN PLAN REQUIREMENTS IN CONNECTION THEREWITH, AND (D) TO DEPOSIT ANY RESIDUAL FUNDS WITH THE COURT

Hobart G. Truesdell, the Plan Administrator ("Plan Administrator"), on behalf of Reorganized Favorite Brands International Holding Corp. ("Reorganized FBI"), submits this motion (the "Motion") for entry of an order: (a) reopening the above-captioned bankruptcy case, (b) authorizing the Plan Administrator to make a supplemental final distribution to creditors, (c) waiving certain requirements of the First Amended Joint Plan of Reorganization of Favorite Brands International Holding Corp. and its Debtor Subsidiaries (the "Plan") with respect to the proposed supplemental final distribution, and (d) authorizing the deposit of any residual funds with the Clerk of the Bankruptcy Court. In support of its Motion, the Plan Administrator states as follows:

### Background

1. On March 30, 1999 (the "Petition Date"), Favorite Brands International Holding Corp. and certain of its subsidiaries (collectively, the "Debtors") each filed voluntary petitions in this Court for reorganization relief under chapter 11 of the Bankruptcy Code. During the

Chapter 11 case, the Debtors operated their business and managed their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2. On November 19, 1999, the Debtors sold substantially all of their assets to Nabisco, Inc., Nabisco Brands Company and Nabisco Technology Company (collectively, "Nabisco").

3. On April 7, 2000, the Court entered an order (the "Confirmation Order") confirming the Plan. The Plan became effective pursuant to its terms and the Debtors emerged from Chapter 11 on April 11, 2000 (the "Effective Date").

4. Pursuant to the Plan, Hobart G. Truesdell was selected as the Plan Administrator as appointed under a Plan Administrator Agreement (the "Agreement") to liquidate those remaining assets of the Debtors not included in the Nabisco sale. The appointment of the Plan Administrator and the employment and retention of Walker, Truesdell, Radick & Associates to assist in administration were approved, in each case, *nunc pro tunc* to March 24, 2000, in the Confirmation Order.

5. On the Effective Date, the Debtors' estates were substantively consolidated and the subsidiary Debtors were merged with and into Reorganized FBI and wholly and solely administered under Case No. 99-726 (the "Bankruptcy Case"). Pursuant to the Plan, the rights, powers, and duties of Reorganized FBI were to be exercised by the Plan Administrator in his capacity as sole shareholder, sole officer, and sole director of Reorganized FBI.

6. Following his appointment, the Plan Administrator worked diligently to liquidate and distribute Reorganized FBI's remaining assets and otherwise administer the estate.

7.  As set forth in the Administrator's Final Report filed on September 26, 2001, the Plan Administrator has distributed in excess of $305 million dollars to the Debtors' creditors. In addition, at the time of filing the Final Report, the Plan Administrator had settled all outstanding litigation, settled or otherwise fixed the amount of all disputed claims, and filed all tax returns required to be filed by the Debtors and Reorganized FBI.

8.  On October 31, 2001, this Court entered that certain Order Approving Final Report of the Plan Administrator and Granting Entry of Final Decree Closing the Bankruptcy Cases (the "Final Decree"), a copy of which is appended hereto for the Court's convenience as Exhibit A. Among other things, the Final Order, (a) authorized the Plan Administrator to make a final distribution of remaining cash to certain administrative claimants and holders of allowed claims, (b) authorized the establishment of a Wind-Up Reserve in the amount of $357,000 plus any other cash allocated or returned in the form of uncashed operating or distribution checks, (c) authorized the appointment of an administrator of the Wind-Up Reserve (the "Wind Up Administrator"), (d) authorized the Plan Administrator to deposit all sums remaining in the Wind-Up Reserve after satisfaction of all outstanding post-decree obligations with the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 2041, and (e) terminated these chapter 11 cases and closed the Debtors' estates. Pursuant to the Final Decree, on or about November 30, 2001, the Plan Administrator made a final distribution to the Debtors' creditors and administrative claimants totaling approximately $647,000.

9.  Since making the final distribution, the Plan Administrator has accumulated cash in excess of $149,000, including funds remaining from the Wind Up Reserve as a result of efficient administration by the Wind Up Administrator and supplemental deposits including unexpected refunds from various taxing authorities and higher-than-anticipated uncashed or

unclaimed distribution checks. Net of final wind up costs, the Wind Up Administrator has advised the Plan Administrator that approximately $126,000 should be available as a proposed distribution.

10.    By this Motion, the Plan Administrator seeks authority to reopen the Bankruptcy Case to make a supplemental final distribution from these remaining sums to the Debtors' creditors and to deposit any residual in the Wind Up Reserve with the Clerk of the Bankruptcy Court.

### Jurisdiction, Venue and Statutory Predicates

11.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(a).

12.    This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

13.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1408.

14.    The statutory predicates for the relief requested in the Motion are 28 U.S.C. §§ 350, 2041 and 2042 and Rules 2002 and 3021 of the Federal Rules of Bankruptcy Procedure.

### Relief Requested

15.    By this Motion, the Plan Administrator requests that this Court enter an order: (a) reopening this bankruptcy case (Case No. 99-726 (PJW), the "Bankruptcy Case"); (b) authorizing the Plan Administrator to make a supplemental final distribution to creditors of substantial portion of the cash currently remaining in his possession; (c) waiving certain requirements of the Plan in order to allow the Plan Administrator (i) to make a distribution to any specific holder of an allowed claim only if the amount to be distributed to such holder is more than $25.00 and (ii) stop any uncashed checks on the ninety-first (91st) day after issuance; and

(d) authorizing the deposit of residual funds in the Wind Up Reserve following such distribution with the Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 2041.

## Basis for Relief

### A. Reopening the Case

16. Section 350(b) of the Bankruptcy Code provides in pertinent part that, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the Debtor, or for other cause." 11 U.S.C. § 350(b). Here, the Plan Administrator desires to reopen the Bankruptcy Case in order to distribute additional cash in his possession to the Debtors' creditors. Since the Plan Administrator seeks to administer certain assets in the Wind Up Reserve as estate assets in order to make a supplemental distribution to estate creditors, good cause exists to reopen the Bankruptcy Case. Furthermore, the Final Decree expressly provides that this Court retains jurisdiction to "issue such orders as may be necessary or appropriate implementing any further distributions to be made to claim holders out of any distribution reserve or the Wind Up Reserve." Final Decree ¶ 12.

### B. Supplemental Final Distribution

17. The Final Decree provides that all amounts remaining in the Wind-Up Reserve after satisfaction of all post-decree obligations including the final distribution made in November 2001 "shall be paid over to the clerk of the Bankruptcy Court for disposition pursuant to 28 U.S.C. § 2041 *et seq.*" Notwithstanding this directive, the Plan Administrator believes it is prudent and consistent with his authority and duties to seek relief from this mandate in order to make a supplemental final distribution to creditors (a "Supplemental Final Distribution") of an amount that the Plan Administrator estimates will total approximately $126,000. In order to effectuate the Supplemental Final Distribution without incurring an undue burden and

extraordinary costs that would make it impracticable, however, the Plan Administrator requests a waiver of certain administrative requirements under the Plan.

C. **Waiver of Plan Requirements**

18. The current language of Section 6.10 of the Plan contains two provisions that would make the proposed supplemental final distribution impracticable. First, in making a final distribution, the Plan authorizes the Plan Administrator to cut checks as small as $1.00 to estate creditors. Second, the Plan requires that checks cut in the final distribution may be cashed at any time within one year of the distribution. Taken together, these provisions may be read as requiring the Trustee to issue final distribution checks as small as a $1.00 and requiring the Trustee to maintain an open account to cash such checks for up to a year following the distribution.

19. Accordingly, by this Motion, and solely with respect to the Final Supplemental Distribution, the Plan Administrator seeks a waiver from certain requirements of section 6.10 of the Plan to allow the Plan Administrator to make a Final Supplemental Distribution to a holder of an allowed claim only if the *pro rata* amount to be distributed to such holder is more than $25.00, and to authorize the Plan Administrator to stop any Supplemental Final Distribution check that remains uncashed on the ninety first (91st) day following the mailing date of such distribution.

20. According to the Wind Up Administrator, in distributing approximately $126,600 pursuant to the existing distribution model, approximately 883 creditors would receive distributions under the Plan's existing distribution threshold (i.e., a $1.00 minimum distribution). Of those 883 creditors, 116 creditors would receive an aggregate of approximately $123,600,

comprised of distributions of $25.00 or more. The remaining $3,000 would have to be divided among the remaining 768 creditors, who would receive an average check of less than $4.00.

21. The Plan Administrator believes that waiving certain Plan distribution requirements to allow the Wind Up Administrator to make the Final Supplemental Distribution at the $25.00 threshold is reasonable under the circumstances. The Plan Administrator terminated its distribution agent after making the final distribution in 2001. The Wind Up Administrator has retained electronic distribution model and creditor records sufficient to prepare the Supplemental Final Distribution but has a very small staff -- essentially, a staff of one -- available to administer the process. The Wind Up Administrator believes she can hand-cut and distribute approximately 116 checks in a reasonably short period of time without significant disruption of her other on-going professional duties, but that such a process would be untenable in terms of time and value if the Wind Up Administrator attempted to hand-cut, package and mail checks averaging less than $4.00 apiece to an additional 768 creditors. Furthermore, the cost of attempting to reconstitute the apparatus necessary to handle an automated distribution to such creditors would far exceed the $3,000 that could be distributed to them.

22. Moreover, the requested relief does not adversely affect creditors who will not receive a supplemental distribution. Absent an order approving the Final Supplemental Distribution, all sums in the Wind Up Reserve will be deposited with the Court as provided in the Final Decree. Likewise, those sums not distributed in the Final Supplemental Distribution (after payment of costs) will be deposited with the Court. Accordingly, creditors who are not

included in the Final Supplemental Distribution will not be adversely affected if the requested relief is granted.[1]

23. The Plan Administrator also proposes that the Wind Up Administrator be authorized to stop any check cut in the Final Supplemental Distribution on the ninety-first (91st) day following issuance, notwithstanding the requirement of Section 6.10 of the Plan that such checks be left active for up to a year. The Plan Administrator does not believe it reasonable to require the Wind Up Administrator, who has already served for five years, to remain active for as much as one additional year waiting for all Supplemental Final Distribution checks to clear. Furthermore, in the experience of both the Plan Administrator and Wind Up Administrator, little would be gained by waiting a full year, as distribution checks that are not cashed within a few weeks at the outside are typically returned as undeliverable or otherwise not cashed.

24. Again, any uncashed funds after 90 days would be repatriated into the Wind Up Reserve and deposited with the Court pursuant to 28 U.S.C. § 2041. This Court previously granted similar relief in this case in the Final Decree, allowing the Wind Up Administrator to stop any check that had not been cashed by March 1, 2002, or approximately 90 days following the final distribution made in connection with the Final Decree. Final Decree ¶ 4.

### D. Deposit into Court

25. Finally, the Plan Administrator requests that this Court enter an Order of Deposit pursuant to 28 U.S.C. § 2041 authorizing the Plan Administrator to make a future deposit with the Clerk of the funds remaining in the Wind-Up Reserve after the Final Supplemental Distribution.

---

[1] To the extent this request could be argued to be a Plan modification, the Trustee believes the proposed relief constitutes merely a technical modification that does not materially adversely affect or change the treatment of any claims and therefore, pursuant to Bankruptcy Rule 3019, would not require additional disclosure or notice to creditors.

## Notice

26. The Plan Administrator is serving this on the Office of the United States Trustee and on Delaware law firms that represented the Debtors, the Official Committee of Unsecured Creditors or which otherwise appeared in the Bankruptcy Case years ago on behalf of other parties in interest. The Plan Administrator submits that such notice is adequate and sufficient under the circumstances and given the relief requested.

WHEREFORE, the Plan Administrator requests this Court enter an order (a) reopening the Bankruptcy Case, and (b) authorizing the Plan Administrator to make the Final Supplemental Distribution to creditors and deposit any residual funds with the Clerk of the Bankruptcy Court as described and in the manner described in the Motion.

Dated: November 14, 2006
Wilmington, Delaware

                                   Mark S. Melickian (IL No. 6229843)
                                   GARDNER, CARTON & DOUGLAS
                                   321 N. Clark Street, Suite 3400
                                   Chicago, Illinois 60610
                                   (312) 644-3000

                                                 - and -

                                   _____
                                   Thomas G. Macauley (ID No. 3411)
                                   ZUCKERMAN SPAEDER LLP
                                   919 Market Street, Suite 990
                                   Wilmington, DE 19899-1028
                                   (302) 427-0400

                                   Attorneys for the Plan Administrator